IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY GAY, IDOC # B62251, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-20-GPM |
| | ) |
| MARVIN POWERS, Medical Doctor, | ) |
| Tamms Correctional Center, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on the mandate of the United States Court of Appeals for the Seventh Circuit issued May 9, 2011 (Doc. 24). On January 7, 2011, Gay, a prisoner in the custody of the Illinois Department of Corrections who currently is incarcerated in the closed maximum security prison at the Tamms Correctional Center ("Tamms C-Max"), filed this action pursuant to 42 U.S.C. § 1983 for an alleged violation of his constitutional rights by a person acting under color of state law. It appears from the allegations of Gay's pro se complaint that Gay is in the habit of mutilating himself; he is, colloquially, a "cutter." On August 27, 2010, the complaint alleges, Gay cut his scrotum. Gay alleges further that Defendant Marvin Powers, a physician at Tamms C-Max, did not suture Gay's injury until August 30, 2010. On September 30, 2010, Gay was brought to the Heartland Regional Medical Center ("Heartland") in Marion, Illinois, because the injury to Gay's scrotum was not healing properly. Attached to Gay's complaint is a consultation report prepared by Lawrence Hatchett, a physician at Heartland. *See* Doc. 1 at 5-6. In the report Hatchett recommends that Gay be brought back to Heartland in approximately a month for a left hydrocelectomy on Gay's

scrotum; apparently Hatchett's concern was that Gay would attempt to drain the hydrocele himself. *See id*. at 6. According to Gay's complaint, Powers disregarded Hatchett's recommendation. Also, Gay claims that his scrotum continues to be swollen and painful and that Powers has refused to treat Gay's scrotum. Gay claims further that Powers is falsifying Gay's medical records to make it appear that Gay's scrotum is healing when in fact it is not healing.

Gay filed with his complaint in this case a motion for leave to proceed in forma pauperis ("IFP") (Doc. 2). As Gay concedes, three or more civil actions he has brought while a prisoner have been dismissed as frivolous, malicious, or as failing to state a claim upon which relief may be granted. *See, e.g., Gay v. Page*, Civil No. 99-365-MJR (S.D. Ill. Jan. 31, 2002) (order dismissing action for failure to state a claim upon which relief may be granted); *Gay v. Welbourne,* Civil No. 00-29-GPM (S.D. Ill. Nov. 21, 2000) (order dismissing action as frivolous); *Gay v. Montgomery,* Civil No. 99-366-GPM (S.D. Ill. Jan. 13, 2000) (same). Under the terms of 28 U.S.C. § 1915, which governs leave to proceed IFP in federal court,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). By order entered January 14, 2011, the Court rejected Gay's allegations of imminent danger in this case, noting that the only imminent danger Gay appeared to be in was that he might commit further acts of self-mutilation. In denying Gay's IFP motion, the Court pointed out that "'a prisoner cannot *create* the imminent danger so as to escape the three strikes provision' of Section 1915(g)" and that "'bouts with self-inflicted injuries do not suffice' to meet the test of

imminent danger." Doc. 4 at 4 (quoting *Wallace v. Cockrell*, No. 3:03-MC-60-M, 2003 WL 21528744, at *2 (N.D. Tex. July 3, 2003)) (emphasis added). Accordingly, the Court ordered Gay to tender the full $350 filing fee for this action not later than February 3, 2011, or the action would be dismissed. *See id*. at 5. On February 1, 2011, the Court denied a motion by Gay for reconsideration of the Court's January 14 order denying leave to proceed IFP and reiterated that, unless Gay paid the full filing fee for the action by February 3, the action would be dismissed. *See* Doc. 6; Doc. 7. On February 5, 2011, after Gay failed to tender the full filing fee for the action as ordered, the Court dismissed the action; judgment was entered the same day. *See* Doc. 8; Doc. 9.

On February 18, 2011, Gay's notice of appeal from the Court's judgment in this case was docketed, together with a motion for leave to appeal IFP. *See* Doc. 10; Doc. 11. By order entered February 27, 2011, the Court denied Gay's request to appeal IFP. *See* Doc. 17. Gay renewed his request to appeal IFP in the Seventh Circuit Court of Appeals. On May 9, 2011, the Seventh Circuit Court of Appeals vacated this Court's order denying Gay leave to appeal IFP and remanded the case to this Court for a determination of whether Gay is under imminent danger of serious physical injury. In its mandate the Seventh Circuit Court of Appeals expressed particular concern about Gay's allegations that, as a result of the incident on August 28, 2010, in which Gay cut his scrotum, "his testicle is swollen and causing him continuous pain" and that Powers "is falsifying [Gay's] records and indicating that the injury is resolving when it is not." Doc. 24-1 at 1. Accordingly, the Seventh Circuit Court of Appeals returned the case to this Court "to permit the district court to consider whether Gay's allegations that the defendant is refusing to treat his swollen testicle and that [Gay] is in constant pain are sufficient to allege the imminent danger exception to the three-strikes

bar." *Id*. at 2.  On June 11, 2011, the Court directed Powers to appear and respond to Gay's allegations of imminent danger.  *See* Doc. 25.  On February 2, 2012, the Court conducted an evidentiary hearing on Gay's allegations of imminent danger at Tamms C-Max.  Gay appeared pro se; Powers appeared through counsel.

The Seventh Circuit Court of Appeals recently furnished the trial courts of this Circuit with important guidance about the correct means of handling disputed allegations of imminent danger of serious physical injury.  "[A] court considering a motion to proceed IFP should not attempt to evaluate the seriousness of a plaintiff's claims.  But it has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger.  Courts routinely deny IFP requests where the imminent-danger allegations are 'conclusory or ridiculous,' or where they concern only past injuries."  *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)).  Thus, where a prisoner's claim of being under imminent danger of serious physical injury is contested, "a court must act to resolve the conflict."  *Id*.  "A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations.  Such a rule would allow easy evasion of the three-strikes rule."  *Id*. at 485-86.  The *Taylor* court said further that "[w]e . . . agree that a hearing is one proper way to resolve the issue, though we caution courts to be conscious of such a hearing's proper scope."  *Id*. at 486.  "As a general rule, we would expect that an IFP determination should not evolve into a full-scale merits review, though in many cases . . . the allegations of imminent danger are linked to the allegations underlying the suit."  *Id*.  With the foregoing guidance from the Seventh Circuit Court of Appeals in mind, the Court turns to consideration of the evidence that was adduced at the

hearing on Gay's allegations of imminent danger conducted by the Court at Tamms C-Max on February 2 of this year.

The medical records put into evidence at the February 2 hearing do not reflect that Powers has failed to treat the injury Gay inflicted on his scrotum. Rather, the records show that Gay was examined by Powers in connection with the injury to Gay's scrotum on August 30, 2010, January 3, 2011, January 14 2011, January 20, 2011, and March 7, 2011. Additionally, records of an examination of Gay's scrotum conducted on May 3, 2011, while Gay was at the Pontiac Correctional Center ("Pontiac") on a writ of habeas corpus ad testificandum were forwarded to Tamms C-Max for Powers's review in June 2011. Gay's medical records reflect also that the nursing staff at Tamms C-Max repeatedly examined Gay's scrotum on August 27, 2010, August 28, 2010, August 29, 2010, August 30, 2010, and August 31, 2010, as well as on December 30, 2010, December 31, 2010, January 4, 2011, January 20, 2011, March 8, 2011, and January 20, 2012. Additionally, while Gay was at Pontiac, his scrotum was examined by medical personnel on February 24, 2011, February 25, 2011, February 26, 2011, and May 3, 2011. Powers's notes of his examinations of Gay show that Gay's scrotum was healing normally. For example, Powers's notes of his examination of Gay's scrotum on January 3, 2011, state that Gay's "[t]esticles are very nearly equal in size. [Gay] [d]oes have mild hydrocoele, considerably more than when seen 28 Dec. 2010. The wounds are healed, no drainage, no tenderness. [Gay] [e]ntered laughing and taking loudly." Similarly, Powers's notes from his examination of Gay on January 14, 2011, state that Gay's "left testicle is, perhaps, slightly enlarged and slightly softer than [Gay's] other testicle. This is not tender to palpation and [Gay] expresses no painful response. He has minimal hydrocoele on left side which had resolved several weeks ago." Powers wrote also that "[t]his

current hydrocoele will resolve if allowed," meaning that Gay must refrain from "continuously physically irritating [his] scrotum. It [the hydrocele] resolved before and it will again if [Gay] stops aggravating it. [Gay] definitely is not experiencing any pain in the genital area." Finally, Powers's notes of his examination of Gay's scrotum on March 7, 2011, state: "Inspection of [Gay's] gonads reveals normal sized testicles, cords. No hydrocoele appreciated. Testes not tender, not swollen. Scrotum laceration well healed, penis intact. No inguinal adenopathy, leg laceration healed and intact." Powers testified that he declined to bring Gay back to Heartland for a left hydrocelectomy on Gay's scrotum, but explained that Gay's hydrocele was resolving itself and that Gay's scrotum would heal completely if Gay would refrain from lacerating it. The Court had the opportunity to observe Gay's demeanor during the February 2 hearing and notes that it was not the demeanor of a man in constant, severe pain, as Gay claims to be.

With respect to Gay's claim that his medical records are being falsified by Powers, at the February 2 hearing it was disclosed that the gist of this claim is simply that Powers has refused to concur in Gay's belief that he, Gay, suffers from an inguinal hernia that requires surgery; said differently, Gay believes that Powers has falsified Gay's medical records by failing to diagnose Gay as suffering from an inguinal hernia demanding surgery. A considerable portion of Gay's examination of Powers at the hearing was devoted to eliciting testimony to the effect that Powers had failed to use a variety of exotic devices, such as a computerized axial tomography scan (commonly known as a "CAT scan" or "CT scan") to ascertain whether Gay indeed is suffering from an inguinal hernia that requires surgery. Gay relied also upon a brief note by a physician's assistant at Pontiac suggesting that Gay might be suffering from an inguinal hernia. Powers testified that the ordinary, medically-accepted means of ascertaining the existence of an inguinal hernia is palpation

of a patient's genital region, and that Gay is not suffering from an inguinal hernia. Powers pointed out further that, even were it the case that Gay is suffering from an inguinal hernia (and Powers was adamant that Gay is not), surgery would be mandated only if the hernia were strangulated or incarcerated. Although Gay suggested at the hearing that an examination by an independent medical expert might bear out his claim to be suffering from an inguinal hernia, it is axiomatic that "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Rather, "[u]nder the Eighth Amendment, [a prisoner] is not entitled to demand specific care" or "the best care possible," only "reasonable measures to meet a substantial risk of serious harm[.]" *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). In any event, the Court has no reason to doubt the professional opinion of Powers, a medical practitioner of some forty years' experience whose testimony the Court finds more credible than Gay's uninformed speculation about whether or not he, Gay, is suffering from an inguinal hernia.

      In summary, what the evidence adduced at the February 2 hearing shows at most is that Gay has suffered a past, self-inflicted injury that presents no imminent danger of serious physical injury to him. However, "[i]n order to meet the imminent danger requirement of 28 U.S.C. § 1915(g), the 'threat or prison condition must be real and proximate.'" *Ciarpaglini*, 352 F.3d at 330 (quoting *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002)) (brackets omitted). "[P]ast harm do[es] not suffice; the harm must be imminent or occurring at the time the complaint is filed." *Id*. (citing *Heimermann v. Litscher*, 337 F.3d 781 (7th Cir. 2003)). The record shows that, as of the time Gay's complaint was filed, his scrotum was neither swollen nor painful. Similarly, the weight of the evidence shows that Gay is not suffering from an inguinal hernia, so that there has been

no "falsification" of Gay's medical records by Powers. Gay "is a seasoned vexatious litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve his ends." *McNeil v. United States*, No. CV-05-211-AAM, 2005 WL 1915842, at *1 (E.D. Wash. Aug. 9, 2005). However, "the United States Courts are not powerless to protect the public, including litigants . . . , from the depredations of those . . . who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings." *In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1981). *See also Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999) ("[C]ourts are not obliged to be a playground where prisoners with nothing better to do continuously file frivolous claims.").[1]

To conclude, the Court **FINDS** that Gay is not under imminent danger of serious physical injury within the meaning of 28 U.S.C. § 1915(g) so as to be permitted to proceed IFP on appeal. The Clerk of Court is directed to transmit a copy of this Order to the Clerk of the Seventh Circuit Court of Appeals.

**IT IS SO ORDERED.**

DATED: February 22, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge

---

1. In this connection, it is worth noting that this case is far from the first lawsuit that Gay has maintained against Powers in this Court. *See Gay v. Powers*, Civil No. 98-772-GPM; *Knox v. Rhodes*, Civil No. 08-277-JPG; *Knox v. Rhodes*, Civil No. 08-379-JPG; *Gay v. Clover*, Civil No. 09-925-JPG; *Gay v. Powers*, Civil No. 11-27-JPG. It should be noted also that none of the aforementioned lawsuits has been resolved in Gay's favor.